Second case for argument this morning is Lyons v. Dart The plaintiffs in this case brought a First Amendment challenge to a policy in the Cook County Jail limiting inmates' possession of books and magazines. In particular, there's a policy set forth in the Cook County Jail's Inmate Information Handbook which prohibits inmates at the jail from having more than three total books and or magazines that are not deemed to be religious materials. The District Court declined to rule on the constitutionality of the plaintiff's First Amendment challenge to this policy because she found that neither plaintiff had standing to proceed on their First Amendment claims. That decision was an error and we're asking the court to correct that error today. The plaintiffs have standing for each form of relief they seek. Turning first to Mr. Coger. Gregory Coger was an inmate in the Cook County Jail for approximately three months in 2013. During that time, he received over 40 books from friends on the outside who sent them to him through the mail. But pursuant to the jail's policy, all but three of those books were confiscated from him by correctional officers in the jail. Does the jail have a policy about what happens to the confiscated books? It does not. And the record here shows that Mr. Coger doesn't know what happened to his books. All he knows is that they were taken from him during a cell search when he was out of his cell and he never saw them again and they were never returned to him. The District Court found that Mr. Coger... You didn't engage in any discovery to try to find out the policy? We certainly deposed the officer who was in charge of the search. And we deposed a 30 v. 6 witness who testified about the jail's policy, both of whom said they didn't know what happened to the books and that there was not an official policy concerning... The way to find that out would be to serve an interrogatory asking the Sheriff's Office as an institution what its policy is. We did ask that question and there isn't a policy concerning this matter. Is that what they said in response to the interrogatory? This is what their 30 v. 6 representative concerning policy stated in his deposition. The District Court found that Mr. Coger lacked standing to seek declaratory relief and compensatory damages under the Parrott-Hudson Doctrine. That doctrine provides that a plaintiff may not bring a Section 1983 procedural due process claim for a wrongful deprivation of his property, whether intentional or negligent, that's occasioned by the random and unauthorized act of a state official, so long as the person has an adequate state court remedy. And the District Court found that Mr. Coger should have pursued a state court remedy for the deprivation of his books. That decision was an error. An application of the Parrott Doctrine to this case was an error. In particular, Mr. Coger does not allege that the deprivation of his books was occasioned by a random or unauthorized act. Well, it's obvious that there is a policy limiting the number of books to three. If there's no policy at all about what happens to excess books, it's hard to see how anything is either random and unauthorized or completely authorized, right? Is it your position that as long as there's no policy, Parrott just drops out of the picture? No, Your Honor, here there is an official policy that defines books in excess of three as contraband. And we know that in the Inmate Information Handbook, contraband... Let me put it a different way. Coger had a property interest in the books, and the argument seems to be that he was deprived of that property interest without any legal support. Why wouldn't that come within Parrott? That is not Mr. Coger's claim here. The gravamen of his complaint is that the deprivation of his books was a violation of his First Amendment rights. His First Amendment right to receive them. No, no. Look, I don't want to confuse the how many you can have in the cell with what happens to the books afterward. A lot of the briefing in this case seems to have confused those two things. Well, without regard to what happens to the books eventually, whether he could eventually get them back or not, which we know he couldn't... I don't know that we know he couldn't. He alleges that he didn't, but without some kind of policy, I don't know that we know he couldn't. Well, even... I hope you can see what I'm trying to get at. I do understand that, but Mr. Coger's concern isn't really with the deprivation of his property. It's with the consequential interference with his First Amendment right to read, to receive information, and to communicate with his friend, Barbara Lyons, who sent him the books. If this is just a claim about no more than three books in the cell, regardless of what happened to the books afterward, then it seems clear that Peratt has nothing to do with it because there is a three-book-in-the-cell policy. But then this suit is dead on arrival. Those kinds of policies have routinely been sustained. I thought you were trying to bring a suit that had a chance of success. I certainly am. I hope that I do. I think that looking at the constitutionality of this policy, we have to look at it under Turner versus Safley. And the jail has asserted various institutional interests that are served, or allegedly served, by a restriction of three books. However, there is a lot of evidence in the record that undermines the rationales that the jail has given for its policy. In particular, it allows inmates to possess, without any numerical limitation, an unlimited number of school books, religious books, books about substance abuse classes they may be taking, legal materials, loose-leaf paper, and writing pads. So it's difficult to see how the jail's policy limiting inmates to possession of three total books or magazines could possibly meaningfully advance the asserted interests in the safety and security of the institution. It's difficult to fathom that this policy would have anything more than a de minimis impact on the amount of paper materials that could potentially pose problems in the jail. Moreover, the jail already has a method of limiting inmates' possession of property. In particular, they require inmates to store all of their personal property other than their shoes in something called a property bag, which is a soft plastic bag in which inmates are expected to store everything, including books and magazines. So I think that defendant's own expert confirmed that the jail's policy was redundant of the numerical limitation, or of the volume limitation that's placed on all books and magazines in the jail. Moreover, I would say that this Court has repeatedly recognized that restrictions short of an outright ban on reading, or restrictions short of a complete interference with the First Amendment interest still raise substantial First Amendment concerns that need to be addressed under the four-factor test set forth in Turner. What are the damages, if you're saying there's a deprivation of a First Amendment right, what damages are you looking at that bypasses or are going through some sort of administrative process in the state? Sure. With regard to Mr. Coger, he seeks both nominal damages and a declaratory judgment, as well as compensatory damages to both compensate him for the loss of his First Amendment freedom to read, to receive information, and to communicate with Barbara Lyons, who sent him the books, as well as for the deprivation of his books. I think that where, as here, a deprivation of property has occurred pursuant to an official policy of the institution, Parrott does not come into play, even if what's being sought are compensatory damages for the loss of that property. You say their policy is a deprivation of a First Amendment right. That's correct. And there's damages from that. Correct. And you say it's nominal, and what else, if something else? Sure. And there's, of course, the loss of Mr. Coger's books. Over 30 books were taken from him pursuant to the policy. No, I thought you were telling me that this claim was about the number limit, and not about what happened to the books. If it's about what happened to the books, we're back in the world of Parrott. You really have to pick. You can't play both ends against the middle. Well, when the deprivation of the books happens pursuant to a policy that violates the First Amendment, it's different, and I think it's outside of Parrott. I'd also want to turn to Ms. Lyons' claim. Ms. Lyons, who is here in court today, is a private citizen who regularly communicates with inmates in a variety of correctional institutions. She sends them books on a regular basis. She seeks out people to communicate with, and she... Well, she only became aware of it after the books she had sent to Mr. Coger were confiscated from him. And as a result of that confiscation, not only were her First Amendment rights to communicate with Mr. Coger interfered with, but she is currently, on an ongoing basis, chilled from exercising her First Amendment rights due to a fear that the books that she sends will not make it to... Only if they exceed three. That's correct. That's just back to the validity of the policy. Right, of course. If it's a valid policy, then it doesn't violate anybody else's rights to send books. You can send as many books as you want. The prisoner just has to be careful not to have more than three in his cell at a time. Right? Sends excess books home. If it's an invalid policy, then it doesn't matter what happens to Lyons in this case. The district court found that neither plaintiff could proceed on their claims here. So it never... That I understand. And I understand why you want to argue for both plaintiffs. And of course, you beat the Peratt problem if you limit your claim to the policy of three. But if you're complaining about the destruction of the books, you're just, well, you're digging a hole for yourself. Well, I mean, just focusing on the First Amendment issue that's raised here, Mr. Coger was an avid reader while he was in prison. It was his lifeline to the outside world, and the books that he received from Ms. Lyons were very important to him as he did this time that he served in the Cook County Jail. So he did suffer a serious deprivation of his First Amendment interest in reading, access to information, and communication with outsiders due to the jail's policy. So we're asking that the court reverse the district court with regard to Mr. Coger's claim for declaratory relief and at least nominal damages, if not also compensatory damages for the loss of his First Amendment freedoms. Likewise, with regard to Ms. Lyons, we're asking this court reverse the decision of the district court finding that she lacked standing to proceed. And if there are no further questions, I'll reserve the remainder of my time. Thank you. Mm-hmm. Certainly, Ms. Nicholas. Mr. Power. May it please the court. Cook County Jail has a policy that requires detainees to keep their cells and living areas clean and orderly. As a part of that policy, detainees face limits on the kind and amount of specific pieces of personal property. Mr. Coger, sorry, Mr. Power, I don't understand the argument that Coger lacked standing. I just don't understand the argument. These were his books, and he alleges they were taken away and they vanished. They were launched into low Earth orbit or something like that. And he now no longer has the books. How can he not have standing? Well, Your Honor, and apologies if our briefing was a little bit unclear on this. There are kind of two issues here, and they depend on the remedies the plaintiff is seeking. First plaintiff seeks equitable relief, either a declaratory statement or an injunction, to change the policy that Cook County Jail has. As to that ability to change the policy, he lacks standing because he's no longer in Cook County Jail. That's actually a claim of mootness. It's not a claim of standing. We'll take either one, Your Honor. They are different doctrines. It would help if you articulate the doctrine on which you're relying. He also wants damages. Books have market value. Correct. And to the damages claim, it is not a claim for lack of standing, but rather the court ruled on the merits that Mr. Cogar could not bring that procedural due process claim because of the existence of state court remedies. And how is that? Well, first, that's not a matter of standing. Correct, Your Honor. Second, I don't understand how Peratt could apply to a challenge to the policy. Peratt deals with random and unauthorized deviations from policies. But the core of this suit is a challenge to a policy. And by its terms, Peratt doesn't apply to such a challenge. So how could Peratt require the dismissal of the whole lawsuit? It might require some claims to be trimmed off. But how could it require the dismissal of the whole suit? And I think it goes to the damages claims that need to be trimmed off. I do think the Peratt and Hudson reasoning was limited by the trial court's ruling to those damages claims of Mr. Cogar. And Peratt has nothing to do with standing. As you just said 30 seconds ago, it's a decision about the merits that for a random and unauthorized violation, the process due is the opportunity to sue in state court and get money damages. Correct. That's a merits decision. It's not a standing decision. Correct, Your Honor. And the district court ruled on the merits that because of the existence of those state court remedies, Mr. Cogar could not seek damages. But that can't be right with respect to the policy limiting the number of books to three. Because that's not a random and implementation of that policy is not random and unauthorized. And the court then did look to the point Your Honor was bringing up as to the issue being what happened to those books afterwards and the lack of the return of those books to Mr. Cogar and that distinction between the taking and the lack of return. And the policy in question deals with what detainees are permitted to have in their cells. The policy in question does not... I gather... I'm really trying to pin down what this suit is about. But it sounds to me like there are two decisions by the sheriff's office that are contested here. One is the decision to limit the number of books to three. And the second is the decision to let the guards do anything they please with books they confiscate. They can take them home and read them themselves. They can throw them on a bonfire. They can launch them into orbit. The sheriff has chosen to let the guards do what they want. And I take it that you agree that that's the sheriff's policy because there is no formal policy about what happens to the confiscated books. Your Honor, I would say at this point I think we'd be going a little bit outside of the record that you're correct. That issue of what happens to the books at the end of the day has not really been brought up in the course of litigation. No. Look. Ms. Nicholas said she served an interrogatory demanding to know the sheriff's policy and got a response that said there isn't any. Well, that's the same thing. That's the sheriff's formal official statement that the guards can do whatever they want. And I don't believe that's in the record and I also don't believe that's entirely accurate, Your Honor. You don't think an answer to the interrogatory is in the record? Your Honor, the sheriff's office did produce a policy of what happens to contraband. And an individual who is in possession of contraband can be written up or charged with possessing contraband. That's not a policy about what happens to the books. Is there a policy about what happens to confiscated books? Confiscated books would count as contraband. So you think Ms. Nicholas was just not either correctly answering my question or that she just wasn't understanding the meaning of the answer to the interrogatory? I believe so. It would have been very helpful to us. Had you put policy in the brief, told us what you think the policy is. I would agree with that, Your Honor. That part of what happens to the books was not extensively brought up in litigation or in the briefing in the summary judgment. There are two things being challenged here. No more than three. And they took my books and never returned them. That's a policy or lack of policy about what happens. And a policy to let the guards do what they want is a policy. And I don't know if the policy is to simply let the guards do what they want. It was a policy to label the excess books as contraband. That seems to be where it goes. And that could be contraband is drugs, cigarettes, and now books. Correct, Your Honor. And that's where I'm confused because of the First Amendment issue about a deprivation by taking the books or doing something with them. He's out of prison, so all this is after the fact. If the sheriff thinks he can treat books the same way he treats heroin, I suspect he's going to be, well, not well situated to prevail. Well, Your Honor, I would say the policy at issue doesn't look at the substance of any kind of the books, simply the fact that this property is books did not automatically transform this case into a First Amendment case. Sure it does. It's a First Amendment case if it's filed as a First Amendment case. It might be won or it might be lost, but it is a First Amendment case. And the issue with these books and the issue that the policy at issue is trying to prevent is that the books can be misused not for the content of what's in the books but for their physical capabilities. Are you asking us, does your brief ask us to affirm on the merits by saying that the policy of no more than three is valid or that the policy of we can do anything with the books we want is valid? I read your brief as asking us to affirm a conclusion that the plaintiffs lack standing rather than to decide the case on the merits. Are you asking us to decide on the merits? Your Honor, this court is entitled to affirm on merits. I'm not asking what we're entitled to do. I'm asking you what you are asking us to do. We ask you to affirm the district court's opinion that plaintiffs do not. No, we don't affirm opinions. We affirm judgments. I'm asking what you are contending. We are contending that the district court properly decided the case below. We ask you to affirm that plaintiffs did not have standing to challenge to seek equitable remedies and to the extent that they seek damages. Are you asking us to affirm on the merits or just to say there was no standing? The conclusion of your brief says Lyons and Koger failed to show they had standing and therefore the judgment should be affirmed. Is that your position? Or do you want us to modify the judgment so that it deals with the merits? Now, of course, modifying the judgment might have required a cross-appeal. We would like you to affirm the judgment below. I would admit that the briefing, our briefing is a little bit inaccurate there in that in addition to the standing issue, we do contend that the court ruled on the merits as to the due process claim. Finally, though, we do contend that the policy at issue is valid and constitutional and that if you do wish to rule on the merits, the policy is in line with Turner. And if I could turn to Turner, the Supreme Court and Turner v. Safely set forth four factors to consider when determining whether or not a prison policy is constitutional. The first is that there must be a valid rational relationship between the policy at issue and the legitimate governmental interest. The legitimate governmental interest in this case is the security, safety, sanitation of other detainees, prison guards, staff, the facility itself. As is in the record as the briefing sets forth, there are myriad ways that books and magazines can be misused at Cook County Jail and that the goal is to limit the amount of property that can be misused to either hurt other detainees, staff, or the facility. The second Turner factor looks at whether or not individuals have alternative avenues of exercising the right in question. In terms of a more generalized right to receive information and to communicate with individuals on the outside, detainees can make phone calls, they can receive visitors, and then the policy itself does allow for detainees to have up to three books or magazines. So detainees certainly do have other avenues of exercising their right. The third Turner factor looks to the impact that an accommodation would have on the facility and on other inmates and jail staff. As the record states, were detainees permitted to have additional books and magazines? Those are additional books and magazines that would need to be searched, carefully reviewed to make sure they're not being misused, to ensure that they are not concealing other contraband. The impact of an accommodation on Cook County Jail would be significant. Then finally, under the fourth Turner factor, we look to the question of whether or not the jail's policy is an exaggerated response to the concern. And the key aspect of Turner is that this is not a least restrictive alternative test, but rather whether or not the jail's response to the concern is exaggerated. Throughout briefing and at summary judgment, plaintiffs have conceded that some limit on books or magazines at Cook County Jail would be constitutional, and they've characterized what they want to see as simply a de minimis change. And I think that highlights the fact that when plaintiffs only want a de minimis change, Cook County Jail's policy that they've put in place is certainly not an exaggerated response. And now we've spent a lot of time discussing Plaintiff Cogar. As to Plaintiff Lyons, Plaintiff Lyons has never been in Cook County Jail. The policy at issue is not a mailroom policy. It does not regulate what individuals can send to detainees in Cook County Jail, but rather it concerns what detainees are permitted to keep in their cell or living area. Plaintiff Lyons has never been in Cook County Jail. The policy simply doesn't apply to her. Although Plaintiff Lyons has claimed that she's been chilled by this policy, the fact is that there's an objective test when looking at whether or not someone has in fact been chilled. Plaintiff Lyons is not subject to the policy. She's never been threatened by any sanction for violating the policy. She's not aware of any detainees she sent materials to that have been punished or threatened with punishment for violating the policy. And then lastly, Plaintiff Lyons testified in her deposition that she only sends books or magazines to individuals at Cook County Jail when they've requested that they be sent to her. No one other than Plaintiff Cogar has ever requested that any books or magazines be sent to them, meaning that Plaintiff Lyons simply has not been chilled by the policy at issue, and she therefore lacks standing to challenge the policy at issue. Well, Cogar's the only one that wanted more than three books. Is that what you're saying? I'm sorry, Your Honor? Apparently he wanted more than three books at a time. That appears to be his contention. And they let him get as many as 13. I guess they just weren't watching. You said you were having the fourth one, I guess. Correct, Your Honor. It does appear that Plaintiff Cogar sometimes had many more books than the policy allows at Cook County Jail. But just like sometimes people speed and don't get caught, the fact that the plaintiff had more books than he was allowed doesn't invalidate the policy at issue. Moreover, that does go to the issue circling back to the issue of Parrott and the availability of state court remedies. Plaintiff must first demonstrate that he had a right to the property of interest. Thank you, Counsel. Thank you, Your Honor. Anything further, Ms. Nicholas? Yes. I'll just respond briefly to a few points that were raised by counsel for the jail. First, with regard to the issue of whether— Raise your voice. Yes. With regard to the issue of whether this court should rule on the merits of the constitutionality of the policy, we're asking that this case be remanded to the district court. There's an extensive evidentiary record before the district court. This issue was fully and thoroughly briefed before the district court, and the district court declined to rule on it. The constitutionality of this policy under the First Amendment is not properly before this court because the district court didn't enter a decision on it. The district court's decision has not been appealed by defendants, and it's not before this court. So we are asking for remand. With regard to Mr. Coker, even if this court finds that he cannot pursue a claim for compensatory damages for the loss of his books, either because of Peratt or for some other reason, he's still entitled to seek declaratory relief and nominal damages. This court has held several times, including in Crew v. Aiken and Brown v. Bartholomew, that an award of declaratory relief is appropriate as a predicate to nominal damages. So even if Mr. Coker's claim for injunctive relief is moot, which we've conceded in our briefing it is, he still has standing to seek declaratory relief and nominal damages. Finally, with regard to Ms. Lyons, while it is true that this policy does not directly restrict what a person outside the jail can send to an inmate, the unavoidable consequence of the policy is that it works a consequential restriction on Ms. Lyons' speech rights. It is not speculative to say that she wants to send more than three books to inmates in the jail. She's done that on past occasions, as is well and thoroughly documented in this case. Ms. Lyons regularly seeks out new people to correspond with who are imprisoned, and she's testified at length about how important she perceives reading books and communicating with the outside world is to rehabilitation. So on that basis, we ask that this court reverse the decision of the District Court and remand the case for consideration on the merits of plaintiff's First Amendment claims. Thank you. Thank you very much, Counsel. The case is taken under advisement.